ALBANY MEDICAL COLLEGE, Appellant, v RICHARD H. McSHANE, Respondent.

Third Department, November 29, 1984

APPEARANCES OF COUNSEL

*Bond, Schoeneck & King (John A. Beach, Ronald C. Berger* and *Joseph P. Van De Loo* of counsel), for appellant.

*O'Connell & Aronowitz, P. C. (Cornelius D. Murray* and *Leonard R. Kershaw* of counsel), for respondent.

*Cahill Gordon & Reindel (Floyd Abrams* and *Andrew Dash* of counsel), for Associated Medical Schools of New York and another, *amici curiae.*

### OPINION OF THE COURT

WEISS, J.

This case raises the questions of whether a State-chartered medical school may share in the fees from patient care generated by physicians who are faculty members, and whether the medical and financial records pertaining to such patients belong to the school. We think the answer to both questions is yes and, accordingly, reverse the order and judgment of Special Term which granted defendant's motion for summary judgment dismissing the complaint.

In this lawsuit, plaintiff is suing defendant, who had been employed for 6½ years commencing in 1977 to teach, research and run the patient-care program in its division of plastic surgery until December 30, 1983, when he disassociated himself from the school and began his own private plastic surgery practice. Plaintiff seeks to recover all books and records kept in the operation of its division of plastic surgery, including patient records, office equipment and supplies, and fees and revenues from patient care allegedly diverted by defendant. Defendant's answer, which contains an affirmative defense based upon a violation of law prohibiting fee splitting with persons or entities unlicensed to practice medicine, was accompanied by a summary judgment motion to dismiss the complaint. Special Term, in granting the motion, held that plaintiff was not licensed to practice medicine and, therefore, could have no patients, could not split fees nor maintain custody and control over patient records. This appeal by plaintiff ensued.

It is important to recognize that almost 85% of the medical schools in the United States, both public and private, utilize clinical practice plans whereby faculty physicians engage in treatment of patients with limitations on their income imposed by the school (see *Kountz v State Univ. of N. Y.*, 53 AD2d 856, on remand 89 Misc 2d 483, revd 61 AD2d 835, on remand 109 Misc 2d 319, 324, 326-327, affd 87 AD2d 605). It appears that each of the 13 medical schools in this State has a faculty practice plan in

place. Moreover, both the Legislature and the courts have recognized the importance of clinical programs in hospitals and medical schools as a necessary part of medical education. As far back as the year 1908, the Court of Appeals held the statutory prohibitions against the practice of medicine without lawful registration, or by any person not a registered physician, were not intended to apply and could not reasonably be held to apply to hospitals, dispensaries and similar corporate institutions, which by the express provisions of other statutes and their corporate charters were authorized to carry on the practice of medicine (*People v Woodbury Dermatological Inst.*, 192 NY 454, 457). Similarly, the Legislature has recognized the need to exempt students from licensure requirements when participating in clinical programs in hospitals (Education Law, § 6526, subd 8), and has assisted in the creation of a faculty practice plan at a State medical school (see Education Law, former §§ 385-a — 385-i, repealed by L 1982, ch 924, § 3).[*]

■ The issue thus distills to whether this plaintiff requires a license to practice medicine in order to conduct clinical programs and collect fees derived therefrom. Defendant's argument is that without a license, plaintiff's clinical faculty practice plan is illegal and unenforceable because it provides for fee splitting in violation of section 6509-a of the Education Law and 8 NYCRR 29.1 (b) (4). Defendant and Special Term relied heavily upon *United Calendar Mfg. Corp. v Huang* (94 AD2d 176), which held that a business corporation operating a facility for medical and dental care was guilty of illegal practice of medicine and prohibited under section 6509-a of the Education Law from splitting fees with the doctors and dentists it employed. The *United Calendar* case, as well as *Granada Bldgs. v City of Kingston* (58 NY2d 705) and *Paley v Copake Lake Dev. Corp.* (95 AD2d 903) cited by Special Term, are inapposite in that each involved a profit-making corporation that did not operate under pertinent legislative authorization. In contrast, plaintiff was incorporated by act of the Legislature in 1839 (L 1839, ch 26). Pursuant to its charter, plaintiff is presently authorized to "promot[e] medical science and instruction * * * with all the requisite power and authority for that purpose". Since clinical programs are a necessary and integral part of its educational objectives (see *Kountz v State Univ. of N. Y.*, 109 Misc 2d 319, 326, *supra*), plaintiff, like a hospital (see Public Health Law,

* These sections were repealed because a collective bargaining agreement provided alternative authority, making the procedures set forth in the statute superfluous (see McKinney's Cons Laws of NY, Book 16, Education Law, §§ 385-a — 385-i, Repeal Note, p 166, 1983-1984 Pocket Part).

§ 2801-a [hospital's authority to permit its licensed employees to practice medicine]), must be deemed to possess implied powers to permit its licensed faculty members to conduct, and its students to participate in, clinical programs (see Education Law, § 6526, subd 8; *Gause v Commonwealth Trust Co.,* 196 NY 134, 144; see, also, Not-For-Profit Corporation Law, § 202, subd [a], par [16]). Accordingly, splitting the income produced from such clinical practice by faculty members with the medical school is not prohibited (see Education Law, § 6506, subd [9]; *People v Woodbury Dermatological Inst., supra,* p 457; *Albany Med. Coll. v Cunningham,* Supreme Ct, Sullivan County, Aug. 30, 1977, Williams, J.; 6 Ed Dept Rep 254-256).

■ We further hold the financial and patient records generated are the property of plaintiff subject to defendant's right to obtain copies (see *Damsker v Haque,* 93 AD2d 729).

■ The final issue requiring our resolution is whether defendant continued as an employee despite his failure to agree to or sign the new faculty practice plan to become effective on or about July 1, 1982. Since he continued his duties in substantially the same manner and received the same facilities, support services and salary as specified in the last letter agreement signed by him dated August 21, 1981, he remained an employee under the terms and conditions contained in that letter agreement until his termination December 31, 1983 (see *Douglass v Merchants' Ins. Co.,* 118 NY 484, 486). However, factual questions as to the base salary, division of patient fees, and ownership of material and equipment purchased, as well as the amount of fees in issue, have been raised by the parties, all of which require resolution by a trial (see *Cohen v Daughters of Sarah Nursing Home Co.,* 79 AD2d 1042).

MAIN, J. P., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order and judgment reversed, on the law, without costs, and motion denied.